Eduardo **CASTRO–CARVACHE**

v.

**IMMIGRATION & NATURALIZATION SERVICE.**

Civil A. No. 95–2028.

United States District Court, E.D. Pennsylvania.

Dec. 18, 1995.

844

Steven A. Morley, Benjamin Franklin House, Philadelphia, PA, for Eduardo Castro Carvache.

James G. Sheehan, District Director of Philadelphia Office of Assistant U.S. Attorney–Civil Division, Immigration and Naturalization Service, I.N.S., Philadelphia, PA, Kathleen D. Hallam, U.S. Attorney's Office, Philadelphia, PA, for J. Scott Blackman.

## OPINION [*]

LOUIS H. POLLAK, Senior District Judge.

The petitioner/plaintiff in this matter is Eduardo Castro–Carvache, and he has brought an application sounding in habeas corpus to review the denial by J. Scott Black-

[*] This is a transcript of a bench opinion, delivered on April 25, 1995, which has been slightly edited for clarity.

man, as District Director of the Philadelphia Office of the Immigration and Naturalization Service, of a motion to stay Mr. Castro's deportation, pending consideration by the Board of Immigration Appeals of a motion to reopen a determination by the Board of Immigration Appeals adverse to Mr. Castro.

The procedural background for the current habeas corpus petition is that Mr. Castro was the subject of deportation proceedings initiated by the Immigration and Naturalization Service based on charges that, in May of 1991, Mr. Castro, an immigrant from Ecuador and a citizen of that country, was convicted in the Court of Common Pleas of Philadelphia County of the offense of possession with intent to deliver a Schedule II controlled substance in violation of the relevant Pennsylvania statute.

In a proceeding before an Immigration Judge, Mr. Castro was determined to be deportable on the basis of the uncontested allegation of Mr. Castro's criminal conviction. Further, the Immigration Judge denied Mr. Castro's application for discretionary waiver of deportation pursuant to Section 212(c) of the Immigration and Naturalization Act.

Mr. Castro was not represented by counsel during the proceedings before the Immigration Judge; the Immigration Judge advised Mr. Castro of his entitlement to counsel and continued the proceedings once to give Mr. Castro an opportunity to retain counsel. A further request for continuance with a view to trying to obtain funds with which to retain counsel was denied, and the proceedings before the Immigration Judge went forward with Mr. Castro representing himself.

The decision of the Immigration Judge was appealed to the Board of Immigration Appeals and, on February 24, 1995, the Board of Immigration Appeals issued a *per curiam* order. That order notes that Mr. Castro was appearing *pro se*. The order of the Board of Immigration Appeals is as follows:

The appeal filed by the respondent is dismissed. We have reviewed the record of proceedings, the immigration judge's decision, and the respondent's contentions on appeal. The respondent in this case filed a perfunctory appeal that does not address the principal basis of the immigration judge's analysis. We concur in the immigration judge's ultimate conclusion taking into consideration the respondent's employment history and minimal character references. The record contains no significant evidence of property ownership or community service. The appeal does not address in any meaningful fashion the issue regarding the respondent's virtual complete refusal to acknowledge any responsibility or culpability for his previous convictions. *Matter of Buscemi,* 19 I & N Dec. 628 (BIA 1988); *Matter of Edwards,* Interim Decision 3134 (BIA 1990).

As we find that the immigration judge adequately and correctly addressed the issues raised on appeal, his comprehensive and well-reasoned decision is affirmed based upon and for the reasons set forth in that decision.

Shortly after the decision of the Board of Immigration Appeals, Mr. Castro—now represented by retained counsel—filed with the Court of Appeals for the Third Circuit a petition for review of the decision of the Board of Immigration Appeals. The petitioner also filed with the Court of Appeals a motion for a stay of deportation pending consideration by the Court of Appeals of the petition for review. The Court of Appeals denied the motion for stay of deportation.

The petitioner—through counsel—then petitioned the District Director of the Immigration and Naturalization Service for a stay of deportation. That petition (on a form I–246, annexed to which was a supplement to the motion to stay of three pages and an affidavit also of three pages, sixteen paragraphs, to be precise) of Mr. Castro alleged as the reasons for requesting stay of deportation—I am referring here to Paragraph 7 of Form I–246:

Counsel is filing a Motion to Reopen alleging the ineffective assistance of counsel in that an attorney the respondent hired for an appeal to the BIA failed to file a brief on appeal. Also, the immigration judge failed to inform the respondent of his right to have live witnesses in support of his 212(c) application. Respondent is a 27 year lawful permanent resident of the United States, married to a USC, living

with two USC minor children and working-supporting his family.

See attached.

The supplement to the motion to stay recites in part:

Respondent will be filing a Motion to Re-open within 24 hours based upon:

a. The ineffective assistance of counsel due to the fact that his attorney failed to file a brief to the BIA.

b. The fact that the Immigration Judge failed to advise him that he could present live witnesses at the 212(c), including his wife who could testify to significant hardship to herself and her family if the respondent were deported.

c. The fact that the Immigration Judge failed to continue the 212(c) hearing to permit him to retain an attorney.

The supplement then goes on to recite the substantial equities of Mr. Castro in the deportation proceedings and, finally, states:

Respondent only wants a chance to litigate his substantial claims before the Third Circuit and the BIA, especially those regarding the ineffective assistance of counsel.

The next day, which was April 7, 1995, the District Director through his Assistant Director for Detention and Deportation, Theodore R. Nordmark, in a three-page letter dated April 7, 1995, denied the application for a stay of deportation. The copy of the letter from Mr. Nordmark to Mr. Castro, care of Mr. Morley, Mr. Castro's retained attorney, bears a handwritten notation: "Called Mr. Morley's office 4/7/95 at 9:20 a.m., they were informed of denial."

Mr. Morley has represented to this court on argument today that, prior to 9:20 on the morning of April 7, Mr. Morley submitted to the office of the District Director a copy of the motion to reopen, which was intended to be filed with the Board of Immigration Appeals. The record does not establish one way or another whether the delivery of these materials to the office of the District Director was, in fact, accomplished prior to Mr. Nordmark's signature on behalf of District Director Blackman of the April 7, 1995 letter.

For the purposes of the habeas corpus application, which is the subject of the current proceeding, I find it unnecessary to determine whether the petition for review [i.e., the motion to reopen] was actually in the District Director's office prior to the issuance of the decision by Mr. Nordmark for Mr. Blackman denying the application for a stay of deportation.

I should add, parenthetically, that it also appeared at this morning's argument that there is some uncertainty as to whether the petition for review has been "filed" as of yet with the Board of Immigration Appeals. However, the respondents have made it plain that they do not conceive that the question whether the petition to reopen has been filed in some formal sense is of any legal consequence, since it is evident that Mr. Morley on Mr. Castro's behalf has been submitting the motion and copies to the offices of the Immigration and Naturalization Service, including the Board of Immigration Appeals and, apparently, including the office of the Immigration Judge in Baltimore and copies to the District Director, for approximately two weeks.

So, I have advised the parties that I am proceeding on the basis of the assumption that the motion to reopen has effectively been presented to the Immigration and Naturalization Service in some aspect of its multi-faceted entity and I understand that to be acknowledged by the respondents.

I have added this parenthetical note simply to try to clear up an otherwise untidy aspect of the record.

Subsequent to the denial by Assistant District Director Nordmark for District Director Blackman of Mr. Castro's application for a stay of deportation, Mr. Castro, through his counsel, Mr. Morley, filed the habeas corpus petition which is currently before the court. I should note that the petition in its form as filed also includes assertions of jurisdictional reliance on Section 1983 of Title 42 and provisions of the Administrative Procedure Act, but those reliances have been withdrawn by counsel and what remains is the application for habeas corpus.

The first question to be addressed is whether this court, indeed, has jurisdiction to entertain a habeas corpus application, the focus of which is a challenge to the denial by a District Director of the Immigration and Naturalization Service of an application for a stay pending deportation.

 The parties appear to be in agreement that this court has such jurisdiction, so I will not belabor the issue. Suffice it to say that the case law appears quite uniformly to support such jurisdiction. The jurisdiction in question depends on 8 U.S.C. § 1105a(a)(10); the statutory provision which is cited is one which vests in the district court jurisdiction to review by habeas corpus certain categories of orders entered pursuant to the Immigration and Naturalization Act.

The inclusion within the array of orders thus reviewable of denials within the Immigration and Naturalization Service of motions for a stay of deportation is recognized by cases as recent as *Khalaj v. Cole,* 46 F.3d 828 (8th Cir.1995) and *Garay v. Slattery,* 23 F.3d 744 (2nd Cir.1994), and those cases, in turn, refer to earlier authority.

There has been no flat statement to that effect by our Court of Appeals, so I think it appropriate to refer to what authority there is. In *Acosta v. Gaffney,* 558 F.2d 1153 (3rd Cir.1977), Judge Maris, for the Court of Appeals, concluded that there was jurisdiction in the district court to review a denial by the District Director of Immigration in New Jersey of an application to stay deportation. Judge Maris predicated the court's jurisdiction on 8 U.S.C. § 1329. He did not address habeas corpus jurisdiction as such, but it appears from his discussion of 8 U.S.C. § 1329 that he was pointing to that as a jurisdictional section, which was more precisely tailored to matters arising under the Immigration and Naturalization Act than the general federal question jurisdictional statute, 28 U.S.C. § 1331.

In 1985, in *Reid v. Immigration and Naturalization Service,* 766 F.2d 113 (3d Cir. 1985), the Court of Appeals, through Judge Becker, addressed the question of judicial review of a decision of the Board of Immigration Appeals, denying the motion for a stay of deportation pending consideration by the Board of Immigration Appeals of a motion to reopen the deportation proceedings. In footnote 9, on pages 116 to 117, Judge Becker considers the potential implications of a conclusion that a court of appeals does not have jurisdiction to review the denial of the stay and, in that connection, makes suggestions that possibly the deficiency could be remedied in an extraordinary case by exercise of the authority vested in federal courts by the All Writs Act, 28 U.S.C. § 1651(a). The evident thought is that the All Writs Act would give authority to a court of appeals to protect its own potential jurisdiction by reviewing a denial of a motion for a stay of deportation, where the effect of that denial might be to send the alien away from the United States before the Board of Immigration Appeals and, potentially, ultimately, the court of appeals could consider the merits of a motion to reopen in the Board of Immigration Appeals.

The tenor of Judge Becker's footnote could, arguably, by negative implication, be construed as an implication that district courts would be without authority to address a denial by the Immigration and Naturalization Service, in whatever form, of a motion to stay deportation. There is, however, no express discussion by Judge Becker in his footnote of the authority of a district court in the premises; the entire footnote is, in terms, addressed to the authority of a court of appeals. The footnote is clearly an important and thoughtful one, but it is dictum that addresses the authority of the court of appeals and not the authority of the district court.

Strong evidence that *Reid* should not be regarded as cutting against the otherwise uniform judicial pronouncements of the existence of habeas corpus jurisdiction in the district court to review denials of motions for a stay of deportation is provided by the Third Circuit's decision a year after *Reid* in *Matter of Ghalamsiah,* 806 F.2d 68 (3d Cir.1986). There, the Third Circuit was reviewing a decision by the district court for the District of New Jersey, which released the applicant, Ghalamsiah, on bail pending a motion to reopen deportation proceedings and stay deportation. *Ghalamsiah* came before the dis-

trict court on an application for habeas corpus. The district court concluded that a grant of a stay was appropriate in view of its determination that there had been error in the agency that denied the requested stay. The Court of Appeals notes, in footnote 3, "The INS does not appeal from the decision to grant the stay itself. Although the INS does assert that the district court erred in that decision, it acknowledges that Ghalamsiah is likely to get a stay of deportation in any event, because the BIA may act on the petition to reopen deportation proceedings before an appeal of a decision on the merits could be heard." And the footnote winds up by reciting that, "The INS thus appeals only the order of the district court to release Ghalamsiah from custody and to set his bail."

The Court of Appeals agreed with the Service that it was beyond the authority of the district judge to release Ghalamsiah on bail and so ordered, directing that the order of the district court with respect to Ghalamsiah's release on bail be vacated and the case remanded to the district court with directions to remand the proceedings to the district director for disposition of Ghalamsiah's application for release on bail.

Thus, the Third Circuit did not disturb the district court's action with respect to the stay. To be sure, the Court of Appeals was not asked to address the propriety of that determination, notwithstanding that the INS felt that the determination of the district judge on the appropriateness of the stay was in error. But the result of the case is an exercise by the district court of jurisdiction to review the denial of a motion for a stay of deportation by one of the entities of the INS and that assertion of jurisdiction by the district court was not disturbed by the Third Circuit. So, at least by implication, it would seem that the Third Circuit is uniform with the other courts referred to in recognizing such habeas corpus jurisdiction.

A recent instance of the exercise of such jurisdictions in this Circuit is the decision by my colleague, Judge Bartle, in *Mentor v. United States Immigration and Naturalization Service*, 834 F.Supp. 133 (E.D.Pa.1993), a decision in which Judge Bartle denied the writ but recognized that he had jurisdiction

to entertain the petition. That decision by Judge Bartle was one which involved allegations of ineffective assistance of counsel.

▮ Accordingly, I conclude, in line with the parties' agreement and the settled case authority, that I have jurisdiction on habeas corpus to address the propriety of the District Director's denial of the application for a stay pending deportation; and, further, I conclude—and again, pursuant to the agreement of the parties and the settled case law—that the pertinent standard is whether there has been an abuse of discretion by the District Director.

I turn now to the letter of April 7, 1995 in which the District Director states and explains his decision. At the risk of belaboring the obvious, I want to make it clear that in referring to the District Director, I am, in fact, referring to the letter signed by the Assistant District Director on the District Director's behalf.

The examination of the District Director's letter requires some exploration of particular paragraphs. The letter is a long one and I will undertake to focus only on what seems essential. The Director states:

> Your instant application is based on three issues, the filing of a *Motion to Reopen*, ineffective assistance of counsel and failure of the Immigration Judge to inform the respondent of his right to present live witnesses.

The letter then proceeds first to address motions to reopen. The next sequential paragraph following what I have just read quotes from the Code of Federal Regulations:

> Motions to Reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefore was afforded him at the former hear-

ing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing.

The next paragraph consists of a recital of the proceedings before the Immigration Judge, proceedings that took place first on December 31, 1992 and then on February 2, 1993, and the letter points out that Mr. Castro was informed of his right to have representation by counsel and to present evidence and to appeal any decision made by the Immigration Court.

The letter also goes on to point out that at the February 2, 1993 hearing, Mr. Castro "proceeded without legal counsel and submitted evidence in support of his application for a 212(c) waiver." And it goes on to refer to evidence submitted by Mr. Castro in the form of certificates of certain courses taken, statements from wife and children, and letters from a former employer and friend, together with his oral testimony and a written statement.

The recital goes on to say:

It appears that Mr. Castro knew he could present evidence, whether it be written statements or live witnesses. There is no indication that Mr. Castro was unaware of this fact.

It would appear that the paragraph that I paraphrased a moment ago is, at least in considerable measure, responsive to the previous paragraph's quotation from the Code of Federal Regulations which precludes the reopening of deportation proceedings unless there is some showing that the alien was not given an opportunity to apply for discretionary relief.

Further, the paragraph can be taken to be responsive to the third of what the District Director says are the three issues on which the application for a stay of deportation is based, namely, the alleged "failure of the Immigration Judge to inform the respondent of his right to present live witnesses."

The District Director's letter then goes on to state as follows:

Further, you allege that the respondent had ineffective assistance of counsel in that an attorney the respondent hired for an appeal to the BIA failed to file a brief with the appeal. On February 12, 1993, Mr. Castro filed, pro se, an appeal of the Immigration Judge's decision. The only request made was for "30 days after receipt of transcripts within which to file a written brief in response to the oral decision rendered and subsequent order denying relief." The record contains no evidence to substantiate this contention. Reference, *Raphael [Rafael] Figeroa v. Immigration and Naturalization Service*, 886 F.2d 76 (4th Cir.1989).

The balance of the letter recites Mr. Castro's criminal record beginning in 1977, ten years after he came to the United States as an immigrant and continuing through his 1991 conviction. Then the letter notes the proceedings in the Court of Appeals for the Third Circuit; that is the filing of a petition for review and a motion for stay of deportation with respect to the decision of the Board of Immigration Appeals, that filing being on March 24, and the denial on March 30 of the motion for a stay of deportation.

Finally, in its penultimate paragraph, the District Director's letter says:

Additionally, I have carefully considered your instance [*sic*] request and the Service record relating to Mr. Castro. My finding of ineligibility for a stay of deportation is based on his lengthy criminal record. I must conclude that the negative factors far outweigh any possible positive factors contained within his record.

I understand it to be the position of the respondents, as expressed in this morning's argument, that the paragraph which I have just read is the paragraph which explains the denial of the application for a stay of deportation—the explanation is Mr. Castro's "lengthy criminal record," and that is what supports the District Director's "finding of ineligibility for a stay of deportation."

That finding is then supported by the next sequential sentence:

I must conclude that the negative factors far outweigh any possible positive factors contained within his record.

It is my understanding that the respondents read that paragraph as being the Dis-

trict Director's finding of ineligibility "based on [Mr. Castro's] lengthy criminal record." The respondents do not contend that the paragraph embodies a determination by the District Director that an application for re-opening of the decision of the Board of Immigration Appeals would be hopeless, that is to say, is almost certain to be unsuccessful. However, the respondents do take the position that the finding of the District Director of the substantiality of the criminal record and the overbalance of negative factors over possible positive factors supports what the respondents strongly urge—namely, that there is no likelihood that the motion to reopen, if addressed by the Board of Immigration Appeals on the merits, would be successful.

I have summarized the letter of the District Director. I would now like to consider the letter as an explanation of the District Director's decision to deny the motion for a stay of deportation with a view to determining whether the respondents are correct in characterizing the letter as one which is well within the discretion of the District Director.

As I have explained, the District Director begins his discussion in the third paragraph of his letter with the recital that:

Your instant application is based on three issues, the filing of a Motion to Reopen, ineffective assistance of counsel and failure of the Immigration Judge to inform the respondent of his right to present live witnesses.

An examination of the Form I–246, with the annexed supplement to the motion to stay, suggests that the District Director's characterization of the application for a stay of deportation may in some measure have misapprehended the application. The District Director described the filing of a motion to reopen as one out of three issues, the other being ineffective assistance of counsel and failure of the Immigration Judge to inform the respondent of his right to present live witnesses.

Paragraph 7 of I–246, reciting the reasons for requesting a stay of deportation, says:

Counsel is filing a Motion to Reopen alleging the ineffective assistance of counsel in

that an attorney the respondent hired for an appeal to the BIA failed to file a brief on appeal. Also, the immigration judge failed to inform the respondent of his right to have live witnesses in support of his 212(c) application.

And then the recital:

Respondent is a 27 year lawful permanent resident of the United States, married to a USC living with two USC minor children and working-supporting his family.

On the face of Paragraph 7, it appears that the motion to reopen alleges the ineffective assistance of counsel; that is to say that the ineffective assistance of counsel is not an issue separate from the motion to reopen. The separate following sentence may suggest that the allegation that the Immigration Judge failed to inform the respondent of his right to have live witnesses in support of his 212(c) application is an issue separate from the motion to reopen.

However, reference to the supplement to the motion to stay makes it quite clear that both the ineffective assistance of counsel allegation and the allegation that the Immigration Judge failed to advise petitioner that he could present live witnesses at the 212(c) hearing are included in—that is to say, they are supportive of—the motion to reopen.

And the supplement also goes on to allege a further claim not evident on the face of the I–246—namely, that the Immigration Judge failed to continue the 212(c) hearing to permit him to retain an attorney.

The dissonance between the way the application for a stay is filed and the way the application for a stay and its supplemental statement are drafted, and the characterization by the District Director of the application for a stay, is not of itself of great importance, but it perhaps helps us in our exegesis of the District Director's letter.

As I have noted, the letter, after listing what the District Director believes to be three issues, first quotes from the Code of Federal Regulations as to the nature of a motion to reopen and then describes what happened in the hearing before the Immigration Judge and then goes on to a paragraph which commences:

Further, you allege that the respondent had ineffective assistance of counsel in that an attorney the respondent hired for an appeal to the BIA failed to file a brief with the appeal.

As to that allegation, the District Director goes on to say:

The only request made was for "30 days after receipt of transcripts within which to file a written brief in response to the oral decision rendered and subsequent order denying relief. The record contains no evidence to substantiate this contention.

The District Director then cites *Figeroa*, 886 F.2d 76 (4th Cir.1989). The reference to the request for the opportunity to file a written brief thirty days after receipt of the transcripts relates to an entry on the notice of appeal to the Board of Immigration Appeals signed by Mr. Castro.

█ The statement by the District Director that the record contains no evidence to substantiate this contention evidently is a statement that the District Director had no basis for supposing that there was any merit in the allegation of ineffective assistance of counsel in that a retained attorney had not filed a brief with the BIA. That is to say, it is apparent that the District Director concluded that that was an allegation that was without evidentiary support, since all that was in the record that the District Director found pertinent was a request for the opportunity to file a written brief thirty days after receipt of the transcript.

The application submitted to the District Director has annexed to it, under the heading of an affidavit by Mr. Morley, an affidavit by Mr. Castro. That document, described as an affidavit by Mr. Castro, was not sworn to before a notary public, but it was a statement that was taken by Mr. Morley from Mr. Castro when Mr. Castro was in custody and, according to Mr. Morley's recital, there was no available notary public before whom the affidavit could be sworn, though it was signed—the copy that I have in front of me

was not signed, but I believe the parties are in agreement that the document entitled, Affidavit by Mr. Castro was signed—by him. And I do not understand the respondents to make any point of the fact that the statement was not sworn before a notary, but was taken by Mr. Morley, who in turn, executed an affidavit which recites:

The attached statement represents a summary of facts which, based on statements he made to me, he could attest to.[1]

Now, the respondent's position as it emerged on argument this morning was, as I understand it, that the allegation that an attorney had been retained to file a brief, but had not done so, was without corroboration. That, as I understand the respondent's argument, is how we are to read the District Director's recital that "the record contains no evidence to substantiate this contention."

The District Director then referred to the Fourth Circuit's decision in *Figeroa*. *Figeroa* was also a case in which the alien contended that he had been denied the effective assistance of counsel before the Board of Immigration Appeals. There the scenario was somewhat different. Mr. Figeroa was represented before an Immigration Judge and deportation was conceded and the alien then instructed his attorney to file an asylum application on his behalf, which the attorney did not do. Thereafter, Figeroa retained new counsel to file an administrative appeal with the Board of Immigration Appeals in which claims were made of the absence of competent counsel and the appropriateness of asylum. The Board of Immigration Appeals concluded that Mr. Figeroa did not establish any prejudice by his attorney's alleged failure to file his asylum application.

The Fourth Circuit ultimately concluded that Mr. Figeroa had failed to demonstrate prejudice, so the Board of Immigration Appeals was upheld on the merits. It should be noted, additionally, that, subsequent to the filing of the appeal in the Court of Appeals, the alien petitioned for a reopening before the Board of Immigration Appeals, and the

---

1. In the course of announcing this bench opinion, I paused at this point and inquired of government counsel whether I was "correct that the respondents make no point of the fact that Mr. Castro's 'affidavit' was executed in the particular way I've described." Government counsel [Ms. Hallam] responded, "You're correct."

Fourth Circuit was at pains to point out that its determination that Mr. Figeroa had failed to demonstrate prejudice in the decision under review was not meant to characterize as lacking in merit the petition to reopen.

The part, however, of *Figeroa* that is of importance to us, is not the Fourth Circuit's determination that the Board of Immigration Appeals had not erred in its determination of lack of prejudice; the part that is of importance to us is the determination by the Court of Appeals that the Board of Immigration Appeals had been in error in concluding that Mr. Figeroa had not demonstrated the ineffective assistance of counsel. The Fourth Circuit noted that the BIA also rejected Figeroa's ineffective assistance of counsel claim, because he

> produced no evidence to substantiate his contention. There is no letter from [petitioner]'s new counsel requesting Mr. Tellez to respond to the charge made against him, nor apparently, has any complaint been filed against Mr. Tellez by the [petitioner]. In the absence of such evidence, we do not accept the [petitioner]'s unsubstantiated statements.

The Fourth Circuit stated that:

> This lack of corroboration is not a sufficient reason for rejecting Figeroa's ineffective assistance claim. Just as there is no evidence that the petitioner's new counsel attempted to contact Tellez for a "response" to the "charges," there is also no evidence that the attorney would have responded, or that Tellez's assertions regarding the asylum application would have been more credible than Figeroa's.

> We note that any credibility finding made by a trier of fact in deportation proceedings must be supported by substantial evidence. "Although an immigration judge's credibility findings are granted substantial deference by reviewing courts, a trier of fact who rejects a witness's positive testimony because in his or her judgment it lacks credibility should 'offer a specific cogent reason for [his] disbelief.' "

In the instant case, the BIA offered no reason whatsoever for disbelieving Figeroa. They apparently found he lacked cred-

ibility for the simple reason that he was an illegal alien who wished to remain in this country. An individual's status as an alien, legal or otherwise, however, does not entitle the Board to brand him a liar.

So, as to that aspect of *Figeroa*, the Fourth Circuit vacated the Board of Immigration Appeals determination.

Accordingly, when, in the District Director's letter to Mr. Castro, the District Director cited *Figeroa* for the proposition that the record contains no evidence to substantiate this contention, the District Director was relying on a rather feeble reed indeed. That is to say, he was relying on a case in which the Board of Immigration Appeals had been *reversed* for supporting the Immigration Judge in the conclusion that the alien's statement with respect to his retention of counsel was not worthy of belief.

In Mr. Castro's case, of course, we are not dealing at this point with the determination of a court that Mr. Castro is not to be believed on this issue, we are dealing with the determination of the District Director, reviewing the I–246, and the I–246 has annexed to it, in Mr. Castro's affidavit, the recitals in Paragraphs 8 and 9:

> On March 25, 1993, I retained Montgomery Carlin, Esq., to represent me in the appeal to the Board of Immigration Appeals. See attached document.

> Mr. Carlin assured me that I would not be deported and that he would handle everything. At the time that I retained Mr. Carlin, I delivered to him the transcript of the deportation proceedings.

And then in Paragraph 10, Mr. Castro goes on to say:

> At the end of February 1995, I received an order from the Board of Immigration Appeals which affirmed the decision of the Immigration Judge which noted that the appeal was handled "pro se."

I would note that Paragraph 8, which I have quoted, says "see attached document." One can conjecture that the reference there is to a piece of paper which appears as an exhibit in support of Mr. Castro's application in this court—a piece of paper which appears

to be a receipt by Mr. Carlin for $610.00 to file a brief with the Board of Immigration Appeals.

It would appear, on Mr. Morley's candid acknowledgement on argument today, that that receipt or a copy of that receipt was not, in fact, annexed to the I–246, notwithstanding the reference in Mr. Castro's affidavit to "[S]ee attached document." However that may be, I conclude that the recitals made by Mr. Castro in the document entitled, "Affidavit," and in particular in Paragraphs 8 and 9 that I just quoted, are certainly of an evidentiary weight, such that they cannot be disregarded properly by the District Director, if the Service is to carry out its undertakings in consonance with the decision of the Fourth Circuit in *Figeroa.*

Accordingly, I conclude that the I–246, taken together with its annexed papers and without regard to whether the District Director did, in fact, receive a copy of the petition to reopen before the April 7 letter was issued, constitutes a credible allegation of ineffective assistance of counsel and it was an abuse of discretion for the District Director to read the record before him in any other sense.

The respondents, however, take the position that the District Director is entitled to be supported in his denial of the motion for a stay of deportation on the basis of his finding, to which I have already referred, "of ineligibility for a stay of deportation" that "is based on his [Mr. Castro's] lengthy criminal record."

Does that recital by the District Director constitute an independent basis for denial of the application for a stay of deportation, such that the District Director's error in appreciating the substantiality of the allegation of ineffective assistance of counsel should be disregarded? I think the answer must be in the negative.

The courts of appeals and district courts have been at pains to recognize the importance of claims of ineffective assistance of counsel before the Board of Immigration Appeals and/or before an Immigration Judge. The substantiality of such issues is apparent by the most cursory reference to cases such

as *Lozada v. I.N.S.,* 857 F.2d 10 (1st Cir. 1988), *Rabiu v. I.N.S.,* 41 F.3d 879 (2d Cir. 1994) and *Green v. I.N.S.,* 46 F.3d 313 (3rd Cir.1995).

Such claims are not always vindicated. In *Lozada,* for example, the First Circuit did find that, as an initial matter, the Board of Immigration Appeals had been cursory in its dismissal of an appeal by an alien in a situation in which the alien's attorney did not file a brief. It was a case in which the Board of Immigration Appeals, in language that is not too distant from the language used by the Board of Immigration Appeals in Mr. Castro's case, stated that Mr. Lozada "in no meaningful manner identified the claimed error in the Immigration Judge's comprehensive decision." And then, in summarily dismissing the appeal, the Board affirmed the Immigration Judge's decision "for the reasons stated therein."

In *Lozada,* however, the First Circuit ultimately concluded that the Board of Immigration Appeals had rescued itself—and Mr. Lozada—from the ineffective assistance of Mr. Lozada's attorney, by virtue of the great care with which the Board of Immigration Appeals had dealt with the petitioner's application to reopen the case. That application was denied by the Board of Immigration Appeals on its merits, while the First Circuit had the review of the first decision *sub judice,* and the First Circuit was able to sustain the Board of Immigration Appeals because of the particular care which the Board of Immigration Appeals showed in then responding "to petitioner's specific allegations of error." "In effect, as a result of the Board's serious consideration of petitioner's motion to reopen the proceedings, he received nearly all of the attention to his case that ever potentially was available. In these circumstances, it is clear that the petitioner did not suffer ineffective assistance of counsel that rendered his proceeding 'fundamentally unfair.'" 857 F.2d at 14 (1st Cir.1988).

*Lozada* was a case in which—unlike Mr. Castro's case—the alien apparently was represented by counsel before the Immigration Judge.

In *Rabiu*—which I will not undertake to address in detail—Judge Oakes for the Sec-

ond Circuit addressed a claim that the alien's lawyer's failure to file a timely application or waiver of deportation constituted ineffective assistance of counsel, and the Second Circuit reversed the Board of Immigration Appeals on that very issue.

■ In short, allegations of lack of effective assistance of counsel are allegations of serious constitutional error, and it behooves all tribunals, whether Article III courts or administrative tribunals, to address such claims with great care. In particular, issues of this kind would seem to fall within the rubric of the Ninth Circuit's observations in *Blancada v. Turnage,* 891 F.2d 688 (9th Cir. 1989).

In *Blancada,* the Court of Appeals reversed the district court, which had sustained the District Director's denial of a motion for a stay of deportation. *Blancada* is not invoked as an ineffective assistance of counsel case; it is invoked, rather, as an important statement of the absolute necessity of careful examination of constitutional questions, when such issues are raised non-frivolously.

■ To be sure, as has been pointed out in some of the cases, the Immigration and Naturalization Service is not conceptually in a position—even at the level of the Board of Immigration Appeals—to address constitutional questions as such, but it is also apparent from the cases that when the constitutional question is one that relates, for example, to ineffective assistance of counsel, the issues involved in such a claim can be addressed—and are expected to be addressed—within the tribunals of the INS, even though the INS cannot, itself, conceptually make a constitutional determination.

The language of Judge Fletcher, speaking for the Ninth Circuit, in *Blancada*—and it seems of special pertinence here—is as follows:

> We conclude that where an alien puts in issue a claim that raises a non-frivolous constitutional issue yet undecided by either our circuit or the Supreme Court, the district director, the IJ, and the BIA abuse their discretion by denying a stay of deportation to enable the petitioner to litigate his claim.

. . . .

> The federal courts have the responsibility to decide whether the INS is correctly construing the INA and whether the provisions of the INA are constitutional.

. . . .

> The federal courts cannot fulfill these responsibilities if aliens are deported before the courts can hear aliens' non-frivolous constitutional challenges.

> Since Blancada's motion to reopen involves a non-frivolous constitutional challenge to his deportation order yet undecided by this court or the Supreme Court, the district court should have found that the district director abused his discretion in denying a stay of deportation.

In the present case, the District Director denied a stay of deportation on the basis of his finding that the alien had a lengthy criminal record, such that the negatives far outweighed the positives. En route to the finding, the District Director mischaracterized—and misappreciated—the weight of the alien's allegations of ineffective assistance of counsel; that is to say, the District Director found those allegations unsupported under circumstances in which it was an abuse of discretion to reject out-of-hand the alien's submission.

I find unpersuasive the respondent's contentions that the District Director's denial of a motion for a stay of deportation should rest undisturbed because, in any event, Mr. Castro cannot prevail on his motion to reopen. The District Director was advised of the motion to reopen and, evidently, found that was of no assistance. The respondents have disclaimed reading the decision of the District Director as itself an evaluation of the motion to reopen.

■ I take the respondents' construction of the final paragraph of the District Director's letter as a proper construction. I conclude that the District Director's denial of a motion to stay deportation in a situation in which the alien has made a supportable claim of denial of the effective assistance of counsel to be an abuse of discretion. If the District Director's order is not disturbed, it has the irresistible potential of preventing any tribu-

nal—most particularly, the Board of Immigration Appeals and, perhaps ultimately, the Court of Appeals—from ever addressing on the merits the claim of ineffective assistance of counsel.

I do not conceive it to be my appropriate role to be evaluating the substantiality of Mr. Castro's claim of ineffective assistance of counsel. I would only say that the allegations that are of record are ones that strongly support the conclusion that Mr. Castro was unaided by retained counsel in challenging a record made in proceedings before an administrative judge in which Mr. Castro was, himself, uncounseled.

I am not prepared to assume that competent counsel could not have—by brief, before the Board of Immigration Appeals—put a better face on the record actually made before the Immigration Judge, than Mr. Castro was able to, in what the Board of Immigration Appeals characterized as a *pro forma* statement of issues. These are issues of great constitutional moment that cannot be shut off from inquiry by an administrative denial of a motion for a stay of deportation. And, by the same token, these are issues that should not, in my judgment, be assessed anticipatorily by a district court before they are scrupulously examined by the responsible administrative tribunal, in this instance, the Board of Immigration Appeals.

Accordingly, I conclude that Mr. Castro's application for habeas corpus should be granted to the extent that it seeks to overturn the decision of the District Director denying a motion to stay deportation, pending consideration by the Board of Immigration Appeals of the petition to reopen. However, habeas corpus is not warranted to serve the traditional function of habeas corpus—namely, to release the petitioner from custody. Whether any such release pending the consideration of the Board of Immigration Appeals is called for must be addressed, at least in the first instance, by the District Director.

That is part of the teaching of *Ghalamsiah,* a Third Circuit case to which I have referred. And it also comports with the very careful decision of Judge Woodlock in the District of Massachusetts on November 28, 1994 in *Motta v. District Director,* 869 F.Supp. 80. In that case, Judge Woodlock concluded that the petitioner had satisfied the procedural prerequisites required by the Board of Immigration Appeals to stand as a platform for an allegation of ineffective assistance of counsel, and that to deport the alien before the Board had an opportunity to examine the merits of a decision by the Immigration Judge would be a denial of due process.

In this instance, as in *Motta,* it appears from the complaint filed in this court that the petitioner has fulfilled the procedural requirements laid down by the Board of Immigration Appeals in its consideration of *Lozada,* the case that ultimately went to the First Circuit—those being considerations that have to do with notifying counsel who is charged with ineffective assistance of the nature of the charge; submitting evidence of the contract of retainer; and advising the Board of Immigration Appeals of the filing of any charges of malpractice before the appropriate disciplinary body. All that appears to have been accomplished on the basis of the papers before me in this case.

The drafting of a judgment to accomplish what I have decided is a matter which I will leave, in the first instance, to the joint efforts of counsel. Probably Mr. Morley will want to take the laboring oar on this, but with the close cooperation, I am sure, of Ms. Hallam and Mr. Frederick. I will not undertake any further effort at drafting this afternoon. Suffice it to say that the order that is to be approved by this court will recite this court's finding that the District Director's denial of the motion for a stay of deportation was an abuse of discretion and that it is ordered that Mr. Castro's deportation be stayed pending the disposition by the Board of Immigration Appeals of Mr. Castro's motion to reopen, with sufficient time—in the event that the Board of Immigration Appeals decides adversely to Mr. Castro—to preserve Mr. Castro's entitlement to seek review of any such determination by the Board of Immigration Appeals by the appropriate tribunal, which presumably would be the Court of Appeals.

Those are the essential elements of the order that I would contemplate as addressing properly the issues in this case. The order can simply refer to the fact that the reasons for the order have been explicated by this court in its opinion from the bench today.

I, of course, should make it clear that the existing current stay of Mr. Castro's deportation—the stay directed pending the disposition of this application—will stay in force until it is superseded by the entry of the order which I am asking counsel to draft and to submit to me in proper form. I am trusting that counsel will be able, jointly, to agree on a proper form of order and that I will then be able to approve that proposed form of order, though I will want to give it careful scrutiny, given the importance of the issues and the need for certainty as to what it is that is being decided.