# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-10652

United States Court of Appeals
Fifth Circuit

**FILED**

April 25, 2018

Lyle W. Cayce
Clerk

ROBERTO SANCHEZ,

Petitioner-Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Northern District of Texas

O R D E R:

After a heated exchange Roberto Sanchez stabbed Sergio Gonzalez in the chest, killing him. The jury convicted Sanchez of murder and sentenced him to 70 years in prison. In both his state and federal habeas petitions, Sanchez claimed his trial counsel was ineffective (1) for failing to object when the prosecution asked a witness whether Sanchez was legally present in the United States, which he wasn't, and (2) for failing to present evidence to support theories of self-defense, defense of third persons, and necessity. The district court held that Sanchez was not entitled to habeas relief and denied a certificate of appealability (COA). Sanchez now seeks a COA on those two issues.

I.

To obtain a COA Sanchez must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). That standard is satisfied if Sanchez shows "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Id.* at 327. Whether there is room for disagreement over the district court's ruling is viewed through the lens of AEDPA deference that a federal habeas court must apply to claims rejected on the merits in state court. *Id.* at 341 (asking "whether the District Court's application of AEDPA deference . . . was debatable amongst jurists of reason"). That deference requires a habeas petitioner to establish that the state court decision was an unreasonable application of clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1). So a COA should issue if reasonable federal judges could disagree over whether the state court acted unreasonably.

For claims challenging the effectiveness of counsel, there is another layer of deference. The first part of establishing a Sixth Amendment violation is to show that representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). In assessing counsel's actions, courts must take account of the difficult strategic choices defense lawyers have to make in the pressure cooker of trial. *Id.* at 689. Applying AEDPA on top of the deference already built into *Strickland*'s effectiveness inquiry means that the review is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). If a petitioner can overcome these obstacles and show that counsel's performance fell below constitutional standards, he must then show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694. There is no double deference for this prejudice inquiry, but AEDPA's single layer of deference still poses a formidable obstacle.

## II.

Sanchez maintains that trial counsel should have objected when the prosecution asked his cousin whether Sanchez was in the country "legally or illegally." Her response was, "Well, illegal, he doesn't have papers." In the federal habeas proceeding, defense counsel explained that he did not object because "if [Sanchez] testified he would, on his own, offer" information regarding his immigration status with the hope of appearing credible to the jury. Counsel added that he planned to object if the issue had been raised again, so that Sanchez's unlawful status could "not be used to appeal to any prejudice."

But trial counsel's purported strategy based on the possibility that Sanchez would testify was suspect. Given the uncertainty that almost always exists about whether a defendant will testify, why not keep Sanchez's immigration status out of the trial until the point of no return when he takes the stand? In the event he ends up testifying, it is a tried-and-true tactic to take the sting out of damaging cross-examination by first presenting the impeachment evidence during the friendly terrain of direct examination. *See, e.g.*, *United States v. Montani*, 204 F.3d 761, 765 (7th Cir. 2000); *United States v. Gignac*, 119 F.3d 67, 70 (1st Cir. 1997) (both discussing this strategy). If he elects not to testify, which turned out to be the case, the jury never hears the prejudicial information. It does not make sense to let the cat out of the bag before the decision to testify is made, especially when a tool remains to mitigate the surprise of any cross-examination focusing on his unlawful status.

The more fundamental problem is that even if Sanchez had ended up testifying, his immigration status was not admissible under Texas law. Although federal evidence law allows questioning on collateral instances of

misconduct that go to credibility (but not the introduction of extrinsic evidence; the examiner is stuck with the witness's answer),[1] Texas does not. *Compare* FED. R. EVID. 608(b) (providing that "the court may, on cross-examination, allow [specific instances of the witness's conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness"), *with* TEX. R. EVID. 608(b) ("Except for a criminal conviction under Rule 609 a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness."). In accord with the Texas rule prohibiting inquiry into this type of collateral matter, Texas courts bar the introduction of a party's immigration status when that information is "not relevant to proving a material issue in the case." *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 241–42 (Tex. 2010) (quoting *Poole v. State*, 974 S.W.2d 892, 905 (Tex. App. —Austin 1998, pet. ref'd)). Texas caselaw also recognizes the prejudicial impact of such testimony, with one court noting that it is an "inappropriate focal point for argument by the prosecution, particularly in light of the times." *Riascos v. State*, 792 S.W.2d 754, 756, 758 (Tex. App.—Houston 1990) (finding ineffective assistance when, among other things, counsel failed to object to the prosecution's remark during opening statements that the jury would hear from an officer "specializ[ing] in murder by Colombian illegal aliens"). In the quarter century since a state court of appeals made that observation, illegal immigration has only become a more

---

[1] Even with Rule 608(b)'s leeway to impeach on certain collateral matters (subject, like all evidence, to Rule 403 balancing), federal courts have held that evidence of immigration status is not admissible to attack credibility. *See, e.g.*, *Mischalski v. Ford Motor Co.*, 935 F. Supp. 203, 207–08 (E.D.N.Y. 1996) ("Ford has cited no authority, and the court is aware of none, to support the conclusion that the status of being an illegal alien impugns one's credibility. Thus, by itself, such evidence is not admissible for impeachment purposes."); *Carvahe v. I.N.S.*, 911 F. Supp. 843, 852 (E.D. Pa. 1995) ("An individual's status as an alien, legal or otherwise, however, does not entitle the Board to brand him a liar."); *First Am. Bank v. W. DuPage Landscaping, Inc.*, 2005 WL 2284265, at *1 (N.D. Ill. Sept. 19, 2005) (noting that impeachment based on undocumented status is not permitted).

"highly charged" issue. *Republic Waste Servs., Ltd. v. Martinez*, 335 S.W.3d 401, 409 (Tex. App.—Houston 2011) (noting that because immigration is a "highly charged area of political debate," trial courts should carefully weigh evidence of "illegal immigrant status against [its] probative value").[2]

Indeed, a defendant's illegal status is considered so inflammatory that it is often the subject of motions in limine, the point of which is to ensure that testimony is not revealed to the jury that is so prejudicial that even a subsequent instruction to disregard cannot undo the damage. Charles Alan Wright & Kenneth W. Graham, Jr., FED. PRAC. & PROC. § 5037.10 (explaining that the prophylactic motion in limine, the only kind Texas recognizes, is a pretrial mechanism to prevent the introduction of evidence that is "so likely to prejudice the jury that the damage will be difficult or impossible to cure by means short of a mistrial); *see also Romero v. Prindle Hill Constr., LLC*, 2017 WL 3390242, at *4 (D. Conn. Aug. 7, 2017) (granting a motion in limine to preclude evidence of plaintiff's immigration status because that evidence would be unduly prejudicial even if relevant); *Guel-Rivas v. Thaler*, 2012 WL 12838532, at *5 (W.D. Tex. Jan. 19, 2012) (referring to a granted motion in limine precluding the state from alluding to defendant's immigration status); *cf. United States v. Gutierrez-Alvarez*, 2014 WL 2481873, at *1 (S.D. Tex. June 3, 2014) (noting that the court had previously granted a mistrial in the case

---

[2] Texas is not the only state that views undocumented immigration status as highly prejudicial. *See Salas v. Hi-Tech Erectors*, 168 Wash. 2d 664, 671–72 (2010) (noting in the civil case at hand that the risk of unfair prejudice from admitting evidence of plaintiff's immigration status was "too great" and that state courts in the criminal context had recognized "admitting immigration status is prejudicial" and often designed to appeal to jury passions and prejudices); *Maldonado v. Allstate Ins. Co.*, 789 So.2d 464, 466, 470 (Fla. Ct. App. 2001) (reversing a verdict because the limited probative value of a party's immigration status "was thoroughly outweighed by unfair prejudice, confusion of the issues, and misleading the jury"); *Clemente v. State*, 707 P.2d 818, 829 (Cal. 1985) (holding that the admission of immigration status, "even if marginally relevant [regarding damages], was highly prejudicial").

because the prosecution inquired into a defendant's immigration status in violation of the court's order).

Because Texas law would not have allowed the prosecution to ask Sanchez about his immigration status even if he had testified, trial counsel's failure to object seems wrongheaded. It is difficult to conceive that a defense lawyer with full awareness of Texas evidentiary law would have "allowed [this question to be asked] in the interests of trial strategy." *Riascos*, 792 S.W.2d at 758. Even with the two-tiers of deference that *Strickland* and AEDPA combine to afford counsel's performance, at some point trial strategy becomes trial stupidity. At the COA stage, a petitioner does not have to prove that counsel's performance crossed that line. It is enough that, even viewed through a deferential lens, counsel's performance gets close to it. The state court's resolution of the first *Strickland* inquiry is debatable.

The state court also rejected this Sixth Amendment claim on the ground that the single reference to Sanchez's unlawful status did not establish prejudice. A COA should issue if this alternative ground for dismissing the petition is also debatable when viewed through the AEDPA lens. Courts have found *Strickland* prejudice when counsel's errors allowed the jury to hear multiple mentions of the defendant's unlawful status. *See Ramirez v. State*, 65 S.W.3d 156, 160 (Tex. App.—Amarillo 2001) (finding ineffective assistance when counsel failed to object to the prosecution repeatedly calling defendant's neighborhood a "campito" and wrongly stating during closing that counsel called his client a "drunk Mexican"); *Riascos*, 792 S.W.2d at 758 (holding the "cumulative effect" of counsel's errors, including the failure to object to the prosecution mentioning defendant's immigration status, was "outrageous"). In contrast, another Texas court found no prejudice when there was only "a very brief reference [] made to appellant being born in Mexico" and that reference was only made at the sentencing phase (so it could not have influenced the

finding of guilt). *Gonzalez v. State*, 2016 WL 2854288, at *9 (Tex. App.—Corpus Christi July 6, 2016).

As in *Gonzalez*, only one statement referred to Sanchez's unlawful status. But his case has something that case did not: a jury note showing that Sanchez's unlawful status was a topic during deliberations. The jury asked the trial court during the sentencing phase if Sanchez would "remain in our country, or . . . be deported back to Honduras" in the event he is released on parole. The court responded that it was "not able to supply additional information." It did not instruct the jury that Sanchez's immigration status should not be considered even though the note showed that is exactly what the jury was doing. This note eliminates some of the guesswork that is usually all we have in evaluating prejudice. There is actual evidence that the jury was thinking about it, at least during sentencing if not during both deliberations. Also relevant to the prejudice analysis is the caselaw already cited showing that courts often view immigration status as the type of inflammatory information that justifies a motion in limine. And when a pretrial motion does not effectively exclude mention of illegal status in front of the jury, the remedy may be a mistrial. *See, e.g.*, *Gutierrez-Alvarez*, 2014 WL 2481873, at *1. The limine and mistrial cases recognize that the introduction of even a single impermissible mention of a defendant's immigration status is often a highly prejudicial bell that cannot be unrung.

The jury note indicating that Sanchez's unlawful status was on the jury's mind combined with what numerous courts have recognized is the highly prejudicial impact of such information is enough to raise a colorable argument that the state court's finding of no prejudice was unreasonable.[3]

---

[3] The substantial evidence of guilt means Sanchez will likely have a harder time showing the state court's ruling was unreasonable as to his conviction than as to his sentence.

A COA is therefore GRANTED as to the *Strickland* claim focused on counsel's failure to object when a witness was asked whether Sanchez was here "illegally."

### III.

Sanchez also contends trial counsel was ineffective because he failed to present sufficient evidence to support theories of self-defense, defense of third persons, and necessity. But counsel did say during opening statements that Sanchez "reacted in self-defense because he was being overpowered by two individuals." And he requested jury instructions as to all three defenses. Counsel also informed Sanchez that the most effective way to communicate those defenses was to testify, but Sanchez refused to testify in recognition that it would likely be counterproductive because "he was never scared or afraid of the victim, or the situation." So counsel attacked the credibility of the state's witnesses and argued that the evidence failed to show Sanchez committed the crime beyond a reasonable doubt. Jurists would not find debatable the state court's conclusion that counsel's performance on these matters fell within the wide range of sensible conduct.

A COA is DENIED as to this request.

_____
GREGG J. COSTA
UNITED STATES CIRCUIT JUDGE