# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 24-50215

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

February 4, 2025

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

LISA MARIE ORTEGA,

*Defendant—Appellant*,

CONSOLIDATED WITH

———————————

No. 24-50220

———————————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

EVA MARIA GALEAS,

*Defendant- Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC Nos. 2:19-CR-1510-4,

2:19-CR-1510-2

_____

Before GRAVES, ENGELHARDT, and OLDHAM, *Circuit Judges*.

PER CURIAM:[*]

Roberto Galeas-Mejia led a for-profit operation that smuggled illegal aliens into the United States and held them in stash houses until their families paid him. Roberto; his stepdaughter, Appellant Lisa Marie Ortega; and his wife, Appellant Eva Maria Galeas, were tried together and convicted by a jury for their involvement in this operation.[1] Ortega appeals her conviction, challenging the sufficiency and admissibility of the evidence. Galeas appeals her sentence. We AFFIRM.

I.

A.

We start with Ortega's sufficiency of the evidence challenge. The jury convicted Ortega of (1) conspiracy to transport illegal aliens, (2) conspiracy to harbor illegal aliens, and (3) conspiracy to launder monetary instruments. As to the first two counts, Ortega argues that there was insufficient evidence to prove that she was "knowingly and willfully involved in a conspiracy to transport or harbor illegal aliens." As to the money laundering count, she argues that there was insufficient evidence to prove that she "knew the transactions were proceeds of transporting or harboring aliens or that her purpose was to conceal the alleged unlawful activity."

We review preserved sufficiency of the evidence challenges *de novo* but afford "substantial deference to the jury verdict." *United States v. Kieffer*, 991 F.3d 630, 634 (5th Cir. 2021) (citation omitted). "[W]e must affirm a

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

[1] We refer to Roberto Galeas-Mejia and other members of the Galeas family by their first names to avoid confusing them with Appellant Eva Maria Galeas.

conviction if, after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation and internal quotation marks omitted).

At trial, two different cooperating witnesses testified that Ortega was involved in the operation. Roberto's sister, Norma Galeas, testified that her own role in the conspiracy was to "collect money from the illegals" through MoneyGram, Western Union, and deposits to her bank account. She would then withdraw the money and give it to Roberto. When asked whether "anybody else was involved in what [she was] doing," Norma testified that, among others, Ortega was involved. She also testified that Ortega was "[s]ometimes" present during her conversations with Roberto "[a]bout the illegals," where they discussed matters like "getting people through, and that [Roberto] had a driver that was bringing them from Eagle Pass over here to San Antonio." Roberto's other sister, Sandra Galeas, likewise testified that she conspired to transport illegal aliens with Ortega. When asked whether other members of her family received money for transporting and harboring illegal aliens, Sandra testified that, among others, Ortega did.

The Government also presented evidence of a bank account in Ortega's name that had deposits and withdrawals connected to the conspiracy. The Government recovered two phones when it searched Roberto, Galeas, and Ortega's house. These phones included 1,800 photographs documenting financial transactions. At least one of these images matched Ortega's bank account. That account received cash, branch, and money order deposits totaling $36,488 between July 2017 and November 2018. These deposits amounted to nearly 70% of the total deposits—and roughly four times the amount of payroll deposits—that Ortega received during that time. The account records documented a total of $15,100 in branch withdrawals and $13,522.03 in debit card purchases during the

3

timeframe. On two occasions, Ortega withdrew $5,000 within days of receiving cash deposits of over $10,000. On another occasion, she withdrew $2,000 the same day that $2,100 was deposited into her account.

A conspiracy conviction may be based on "uncorroborated testimony of an accomplice or of someone making a plea bargain with the government, provided that the testimony is not incredible or otherwise insubstantial on its face." *United States v. Shoemaker*, 746 F.3d 614, 623 (5th Cir. 2014) (citation omitted). It is the jury's job to decide if testimony is credible; we generally do not declare testimony incredible as a matter of law "unless it pertains to matters 'that the witness physically could not have observed or events that could not have occurred under the laws of nature.'" *Id.* (quoting *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir. 1991)).

Ortega's sufficiency of the evidence arguments primarily challenge Norma's and Sandra's credibility. But Norma and Sandra did not testify to matters that they physically could not have observed, or to events that could not have occurred, so it is not our role to assess their credibility. Plus Norma and Sandra provided testimony that was corroborated both by one another and by the banking evidence.

Based on this evidence, a rational fact finder could have determined beyond a reasonable doubt that Ortega was knowingly and willfully involved in a conspiracy to transport and harbor illegal aliens, and that Ortega knew that the transactions were proceeds of transporting or harboring aliens and that her purpose was to conceal the alleged unlawful activity.

## B.

Ortega next challenges the admission of three categories of evidence: (1) statements regarding weapons, (2) statements regarding the bad acts and crimes of her family members, and (3) statements regarding bad conditions that the illegal aliens experienced. She argues that this evidence was not

relevant—and inadmissible under Rules 401 and 402 of the Federal Rules of Evidence—because it did not assist in proving that *she* conspired to smuggle or harbor illegal aliens, or to launder money. She also argues that this evidence was unfairly prejudicial and misleading—and inadmissible under Rule 403 of the Federal Rules of Evidence—because it indicated that she was associated with violent criminals and cruel conduct.[2]

The parties disagree on the applicable standard of review. Ortega argues that abuse of discretion, subject to harmless-error, analysis applies. The Government disputes that Ortega preserved these arguments, and thus argues that we should review for plain error. We need not resolve this disagreement; Ortega's arguments fail even under the less demanding abuse of discretion standard. A district court abuses its discretion if it makes an evidentiary ruling that is "based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Garcia*, 530 F.3d 348, 351 (5th Cir. 2008) (citation omitted).

Ortega's arguments overlook a key detail: Ortega was tried with Roberto and Galeas. She does not argue that the evidence she challenges was wholly irrelevant at trial, just that it was irrelevant to the charges against *her*. *See United States v. Shows Urquidi*, 71 F.4th 357, 373 (5th Cir. 2023). It appears that Ortega's real grievance is not that the district court admitted irrelevant evidence, but rather that she was tried with Roberto and Galeas—

---

[2] Ortega also argues that she was prejudiced by evidence that "provided the jury with a chance to connect [her] to illegal and undocumented aliens in general, a prejudicial topic that had the chance of misleading the jury" and "can be prejudicial to a defendant on trial." This argument is perplexing. Ortega was on trial because a grand jury indicted her for conspiring to transport and harbor *illegal aliens*. The Government had to connect her to illegal aliens to prove its case. Regardless, our case that Ortega cites for the premise that evidence of immigration status is prejudicial is inapposite. *Sanchez v. Davis*, 888 F.3d 746, 750–51 (5th Cir. 2018), involved the immigration status of the defendant who was on trial.

"*i.e.*, that evidence relevant only to the case against [them] could be presented in such close proximity to the case against [her]." *See id.* Yet Ortega never asked the district court to try her separately, nor does she argue that the district court erred by not *sua sponte* severing the trial. And regardless: "While the district court must guard against undue prejudice, it need not protect conspirators from evidence of their confederates' acts in furtherance of their common illegal aims." *United States v. Manges*, 110 F.3d 1162, 1174–75 (5th Cir. 1997). Ortega has not demonstrated that the district court erred by admitting irrelevant evidence.

Ortega's prejudice arguments fail too. The district court instructed the jury:

> A separate crime is charged against one or more of the defendants in each count of the indictment. Each count, and the evidence pertaining to it, should be considered separately. The case of each defendant should be considered separately and individually. The fact that you may find one or more of the accused guilty or not guilty of any of the crimes charged should not control your verdicts as to any other crime or any other defendant. You must give separate consideration to the evidence as to each defendant.

We have repeatedly held that when multiple defendants are tried together, these exact instructions are "sufficient to cure the possibility of prejudice because the court presumes that the jury followed the court's instructions." *See, e.g.*, *United States v. Posada-Rios*, 158 F.3d 832, 863–64 (5th Cir. 1998). The district court did not abuse its discretion by admitting the challenged evidence.

## II.

We now turn to Galeas's appeal. Galeas only challenges her sentence. She argues that the district court erred by applying two enhancements when

sentencing her. The first is a four-point enhancement under U.S.S.G. § 2L1.1(b)(5)(B) for brandishing a dangerous weapon in connection with the smuggling, transporting, or harboring of an unlawful alien. The second is a two-point enhancement under U.S.S.G. § 2L1.1(b)(8)(A) for the involuntary detention of an alien through coercion or threat, or in connection with a demand for payment. Both enhancements are premised on other conspirators' conduct that is attributed to Galeas because she joined the conspiracy.

Galeas objected to these enhancements at sentencing on the basis that she had not yet joined the conspiracy when the conduct justifying the enhancements occurred. The district court instructed Galeas that it was her burden to prove that the enhancements did not apply by presenting evidence of when she joined the conspiracy. Galeas told the court that she had no evidence to present and conceded that, for the purpose of these enhancements, she joined the conspiracy in December 2017.[3] The district court overruled the objections.

Again, the parties disagree on the applicable standard of review. According to Galeas, this is a claim of procedural error that warrants *de novo* review. The Government, on the other hand, contends that Galeas "never objected below on the procedural grounds she now raises on appeal," so plain error review applies. *See United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003) ("Generally, this Court reviews the district court's application of the Sentencing Guidelines *de novo* and its findings of fact for clear error. . . . When a defendant objects to his sentence on grounds different from those raised on appeal, we review the new arguments raised on appeal

_____

[3] At the time of the sentencing hearing, Galeas maintained that she never joined the conspiracy—a position that she has since abandoned. She conceded, however, that *if* she had joined the conspiracy, it was in December 2017.

for plain error only." (citations omitted)). But as with the previous issue, we need not resolve this dispute because Galeas's challenge fails under either standard of review.

When the government seeks a sentencing enhancement, it typically bears the burden of establishing that the enhancement applies. *United States v. Rabanal*, 508 F.3d 741, 743 (5th Cir. 2007). The presentencing report ("PSR") generally "bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing." *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995). If the PSR factually establishes prima facie that the enhancement applies, a defendant who contends otherwise "bears the burden of demonstrating that the PSR is inaccurate." *Id.* "[I]n the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it." *Id.*; *see also United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999) ("[M]ere objections do not suffice as competent rebuttal evidence.").

Galeas was indicted and convicted for a conspiracy that spanned from September 1, 2014, to June 18, 2019. To support the dangerous-weapon enhancement, the PSR relied on: (1) a June 2018 photograph offered during trial that showed Roberto pointing a firearm at an illegal alien, and (2) a witness's statement that a co-conspirator picked her up from the stash house on July 9, 2018, with a pistol in his waistband. For the involuntary-detention enhancement, the PSR relied, *inter alia*, on evidence that in 2018, a co-conspirator "harbored illegal aliens in a room for three days and fed them once per day, while also threatening their lives if they did not pay an additional $11,000." This conduct all occurred after December 2017, the date Galeas conceded that she joined the conspiracy.

Galeas submits that the district court erred by placing the burden on her to prove that the enhancement *did not* apply, rather than requiring the Government to prove that the enhancement *did* apply. Whether she is correct

24-50215
c/w No. 24-50220

is immaterial. Even if the Government did not specifically prove that Galeas joined the conspiracy before the predicate conduct occurred, Galeas conceded that she did.

\*       \*       \*

The judgments of the district court are AFFIRMED.