# United States Court of Appeals
## for the Fifth Circuit

No. 18-60791

United States Court of Appeals
Fifth Circuit

**FILED**

September 29, 2021

Lyle W. Cayce
Clerk

FRED SANFORD SPICER, JR., *a prisoner incarcerated at the Mississippi State Penitentiary in Parchman, Mississippi*,

*Petitioner—Appellant*,

*versus*

BURL CAIN, *Commissioner, Mississippi Department of Corrections*,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:13-CV-377

Before KING, DENNIS, and HO, *Circuit Judges*.*

KING, CIRCUIT JUDGE:**

Petitioner Fred Spicer, Jr., was convicted of capital murder and sentenced to death. Believing his conviction was the product of his counsel's ineffective assistance at both the guilt and sentencing phases of his trial,

---

* Judge Dennis concurs in the judgment only.

** Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

Spicer sought post-conviction relief. After a series of state-court proceedings, the federal district court concluded that Spicer failed to establish prejudice within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984), and therefore denied his application for a writ of habeas corpus. For the reasons that follow, we AFFIRM.

**I.**

Almost two decades ago, a jury convicted petitioner Fred Spicer, Jr., of capital murder and sentenced him to death. On direct appeal, the Mississippi Supreme Court affirmed, *see Spicer v. State*, 921 So. 2d 292, 300-02 (Miss. 2006), and the United States Supreme Court denied certiorari. *Spicer v. Mississippi*, 549 U.S. 993 (2006).

Believing his conviction was the product of counsel's ineffective assistance at both the guilt and sentencing phases of his trial, Spicer petitioned the Mississippi Supreme Court for post-conviction relief in 2006. And, Spicer's petition was successful in part: the court granted an evidentiary hearing on his sentencing-phase ineffective assistance of counsel claim. Nevertheless, the court denied Spicer's guilt-phase ineffective assistance of counsel claim without a hearing. *See Spicer v. State*, 973 So. 2d 184, 192-204 (2007). It is this claim that we refer to throughout this opinion as Spicer's 2006 guilt-phase ineffective assistance claim.

The two-day evidentiary hearing on his sentencing-phase claim—prior to which Spicer's trial attorneys were deposed and at which both attorneys testified—precipitated a vacatur of Spicer's death sentence, and, in 2007, he was resentenced to life in prison without the possibility of parole.

Following these state court proceedings, Spicer petitioned the United States District Court for the Southern District of Mississippi for a writ of habeas corpus. With the benefit of testimony gathered during the above-

mentioned evidentiary hearing, Spicer argued again that he had received ineffective assistance throughout the guilt phase of his trial.

In light of the hearing testimony, the federal district court determined that Spicer's 2006 guilt-phase ineffective assistance claim was fundamentally altered and, thus, unexhausted. As a consequence, the district court stayed Spicer's federal habeas proceedings and ordered him to present his guilt-phase ineffective assistance claim, supported by the additional evidence, to the Mississippi Supreme Court for consideration in the first instance. *Spicer v. Fisher*, No. 1:13CV377-LG-JCG, 2016 WL 5137759, at \*4 (S.D. Miss. Sept. 21, 2016).

In keeping with this directive, Spicer filed another petition for post-conviction relief, in 2016, asking the Mississippi Supreme Court again to review his guilt-phase ineffective assistance claim, this time presenting the evidence developed at the hearing. (We refer to this claim throughout this opinion as Spicer's 2016 guilt-phase ineffective assistance claim.) In a two-page summary order, the Mississippi Supreme Court declined to do so.

Spicer then returned to federal district court; the district court lifted the stay and reviewed Spicer's guilt-phase ineffective assistance claim on the merits—hearing testimony included. It concluded that Spicer failed to establish prejudice within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984). On that basis, the district court denied habeas relief and a Certificate of Appealability ("COA"). *Spicer v. Fisher*, No. 1:13CV377LG-JCG, 2018 WL 4976816 (S.D. Miss. Oct. 15, 2018).

We granted Spicer's motion for a COA to authorize further review of his claim that trial counsel was ineffective because counsel failed to present exculpatory forensic evidence, failed to otherwise investigate his case, and failed to consult with him prior to trial.

To begin, we establish the scope of our jurisdiction over this appeal by assessing whether our COA is broad enough to encompass Spicer's guilt-phase ineffective assistance claim as presented to the Mississippi Supreme Court in 2006 and 2016. Because we find that it is, we proceed to address both iterations of this claim, first concluding that the 2016 claim is procedurally barred and next that the 2006 claim was properly denied. Accordingly, we AFFIRM.

## II.

As a threshold matter, we recognize that our review in this posture is limited to the issues as to which a COA was granted. *See* 28 U.S.C. § 2253(c); *Sonnier v. Johnson*, 161 F.3d 941, 945-46 (5th Cir. 1998).

In this case, our COA grant concluded that reasonable jurists could debate whether Spicer's claim for "ineffective assistance of counsel based on trial counsel's failure to consult with him, investigate the case, and present exculpatory forensic evidence" was correctly resolved.

Arguments to the contrary notwithstanding, this grant is broad enough to cover Spicer's guilt-phase ineffective assistance claim as presented in 2016 *and* 2006. Although our COA left open for debate "the appropriate scope of the § 2254 record," all evidence included in support of the 2006 claim was also included in support of the 2016 claim, which undoubtedly is properly before us.[1] After all, it was the 2016 claim—along with all

---

[1] Spicer argues that the 2006 and 2016 guilt-phase ineffective assistance claims are "no different in substance." But because counsel's testimony from the post-conviction evidentiary hearing was only included in support of Spicer's 2016 petition and not his 2006 petition, we conceptualize the two claims separately. Indeed, this conceptualization matters because the district court expressly considered the additional evidence that Spicer submitted with his 2016 claim in support of its findings that counsel's performance was inadequate.

accompanying evidence—that the district court expressly reviewed and subsequently denied in the order from which Spicer appeals. And, it is the scope of the evidentiary record that differentiates Spicer's two claims, with the 2016 record encompassing the entirety of the 2006 record, along with some additional testimony.[2]

Accordingly, Spicer's claim, as presented in 2006, falls squarely within the description of the issue identified for review by our COA. *See* 28 U.S.C. § 2253(c)(2).[3] Our order does not explicitly exclude review of the 2006 claim, nor does it otherwise seek to define the evidentiary contours of this appeal in a way that would preclude us from addressing it.

In short, because the COA's scope is broad enough to encompass Spicer's 2016 guilt-phase ineffective assistance of counsel claims, it is necessarily broad enough to include his 2006 claim, and we therefore have jurisdiction to consider them both on appeal. *Cf. Lackey v. Johnson*, 116 F.3d 149, 151-52 (5th Cir. 1997) (holding that we do not address arguments that lie "outside the ambit of the COA").

### III.

Having established as much, we address only the 2006 claim on the merits. This is so because, as we explain below, the 2016 claim is procedurally barred.

---

[2] What is more, we granted the COA with the benefit of having considered Spicer's argument that the district court should have fully addressed his 2006 guilt-phase ineffective assistance claim, which was properly before it.

[3] Importantly, our review poses no risk of a determination that might be inconsistent with the district court's assessment of the 2006 claim's viability. *See Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir. 1997).

*A. Spicer's 2016 guilt-phase ineffective assistance of counsel claim is procedurally barred.*

When—at the federal district court's behest—Spicer presented his 2016 guilt-phase ineffective assistance claim to the Mississippi Supreme Court, that court's written order disposed of it on procedural grounds. Thus, respondent argues, Spicer's 2016 guilt-phase ineffective assistance claim is procedurally defaulted, and this default bars our review. We agree.

Questions of procedural default are assessed *de novo* on appeal. *See Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). The procedural default doctrine precludes federal habeas review where the last state court to consider the claim based its denial of relief on an independent and adequate state-law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). This procedural bar may, however, be overcome by "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law." *Id.* at 750.

### i.    Independent & Adequate State-Law Ground

To satisfy the "independent" and "adequate" requirements, a state court's dismissal must clearly and expressly indicate that it rests on a state procedural bar, and the bar must be strictly or regularly followed by state courts and applied to the vast majority of similar claims. *Amos*, 61 F.3d at 338-39. To that end, the "state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (quoting *Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)).

In this case, the Mississippi Supreme Court explicitly denied Spicer's 2016 petition on the grounds that it was time barred and successive under state procedural laws, Mississippi Code §§ 99-39-5(2) and 99-39-27(9). There is no indication from the face of the court's order that it reviewed the

merits of Spicer's claim nor that it relied on any federal constitutional law in denying his claim. Indeed, the court's denial of relief appears to rely "clearly and expressly" on state procedural bars, *Amos*, 61 F.3d at 338, and we have routinely held that Mississippi's post-conviction procedural bars for untimely petitions and successive petitions are independent and adequate state procedural grounds in this context, *see Johnson v. Puckett*, 176 F.3d 809, 815 n.3 (5th Cir. 1999) (time bar); *Moawad v. Anderson*, 143 F.3d 942, 947 (5th Cir. 1998) (successive bar of § 99-39-23(6)).[4]

Certainly, the Mississippi Supreme Court has recognized a fundamental rights exception to its procedural bars; and, indeed, in his 2016 petition, Spicer argued to that court that this exception should cover his Sixth Amendment rights and that his rights were violated under *Strickland*. But, Spicer's constitutional arguments notwithstanding, the state court's conclusions were not inextricably linked to a decision under federal law.

This is so because even if Mississippi's fundamental rights exception was available for an ineffective assistance of counsel claim—and, apparently, it is not[5]—there would be no occasion for us to look beyond the clear and

---

[4] In barring Spicer's claim, the Mississippi Supreme Court relied on § 99-39-27(9), which bars second or successive petitions filed in that court. *See* Miss. Code Ann. § 99-39-27(9) (West). We have found the successive bar set forth in § 99-39-23(6), which applies to post-conviction petitions filed in the trial court, *see id.* § 99-39-23(6), to be independent and adequate. *See Lott*, 80 F.3d at 164-65; *Bell v. Miss. Dep't of Corrs.*, 290 F. App'x 649, 655-56 (5th Cir. 2008); *Chancellor v. Mississippi*, 129 F. App'x 878, 879-80 (5th Cir. 2005). "The only difference between [§ 99-39-27(9) and § 99-39-23(6)] is the state court in which the proceeding originates: the Mississippi Supreme Court for § 99-39-27(9)—the trial court for § 99-39-23(6)." *McManis v. DeSoto Cnty. Ct.*, No. 2:04-CV-261, 2007 WL 869617, at *4 (N.D. Miss. Mar. 20, 2007). We can discern no principled reason to reject one of these sections as inadequate while accepting the other as adequate.

[5] In *Rowland v. State*, 42 So. 3d 503, 506 (Miss. 2010), the Mississippi Supreme Court held that "errors affecting fundamental constitutional rights" were excepted from

express words of the state court's order denying Spicer relief on procedural grounds. *See Balentine v. Thaler*, 626 F.3d 842, 854 (5th Cir. 2010) (warning that, in order for us to recognize a "merits-determination," "[t]here must be more than silence," and concluding that "the state court has to make a fair indication that the merits of the claims were reached").

Here, the Mississippi Supreme Court did not even turn to the merits of Spicer's claims in the alternative. *Cotton v. Cockrell*, 343 F.3d 746, 754 (5th Cir. 2003) (holding that a state court's "procedural default determination" is not precluded "from being an independent basis that bars review by the federal courts" even in cases where a state court dismisses a claim on procedural grounds but alternatively addresses the claim's merits). Rather, relying on "MISS. CODE ANN. §§ 99-39-5(2) and 99-39-27-(9)," the court concluded only that "the application for leave [was] successive and time-barred, and not within one of the exceptions."

Given this conclusion, we decline Spicer's invitation for us to divine whether the Mississippi Supreme Court implicitly contemplated a novel

---

Mississippi's Uniform Post-Conviction Collateral Relief Act's ("UPCCRA") procedural bars. The court later clarified that not every allegation of a due process violation rises to the level of an error affecting a fundamental right. *Means v. State*, 43 So. 3d 438, 442 (Miss. 2010).

The Mississippi Supreme Court has yet to hold that an ineffective assistance claim "invokes a 'fundamental right' that circumvents all procedural bars that apply to [post-conviction relief] petitions." *Salter v. State*, 184 So. 3d 944, 950 (Miss. Ct. App. 2015). Mississippi appellate courts have only recognized the *possibility* that the fundamental rights exception could excuse a procedurally defaulted ineffective assistance claim under certain circumstances. *See, e.g.*, *Smith v. State*, 922 So. 2d 43, 47 (Miss. Ct. App. 2006) (stating that the "mere assertion of ineffective assistance is not enough to surmount the procedural bar" and examining a claim to determine whether "it qualifies as an exception to the procedural bar"). *But see Chapman v. State*, 167 So. 3d 1170, 1174-75 (Miss. 2015) (holding that under the "extraordinary circumstances" of the case, the trial court erred in applying a procedural bar to a post-conviction petition raising ineffective assistance and due process claims, and remanding for an evidentiary hearing).

application of the fundamental rights exception and, in doing so, whether it considered the merits of Spicer's constitutional claims. Indeed, to conclude otherwise would allow for the fundamental rights exception[6] to Mississippi's procedural bars to swallow the rule, undermining "the important interest in finality served by state procedural rules," and highlighting "the significant harm to the States that results from the failure of federal courts to respect them." *Coleman*, 501 U.S. at 750.

Instead, looking to the state-court order's express language, we find that Spicer's 2016 guilt-phase ineffective assistance of counsel claim is procedurally defaulted, and we are barred from reviewing it. Further, we conclude that Spicer cannot clear this bar. This is why.

---

[6] Spicer also argues that "Mississippi's procedural bars did not provide an 'adequate' ground for the state court's dismissal of [his] second post-conviction petition." He contends that this is so because the Mississippi Supreme Court applies the fundamental rights exception inconsistently, pointing out that it applied the bar in some cases but did not in others. This argument misses the mark. *See Amos*, 61 F.3d 343-44 (noting that the presence of exceptions to the procedural rule for certain cases of fundamental error did not control whether the rule was strictly or regularly followed). Spicer has not shown that the exception has been applied to claims of ineffective assistance of trial counsel, much less that the exception has been applied inconsistently to claims "identical or similar" to his. *Id.* at 341 (noting that Amos failed to demonstrate that the state court "strictly or regularly appl[ied] the contemporaneous objection rule to claims identical or similar to his Sixth Amendment claim"). Accordingly, Spicer has failed to show that the UPCCRA's procedural bars for untimely and successive petitions are inadequate state-law grounds for denying his 2016 petition.

ii.    Cause and Prejudice

Spicer attempts to overcome the procedural bar by "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law." *Id*.[7]

Establishing cause requires proof that shows "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see, e.g.*, *Maples v. Thomas*, 565 U.S. 266, 280-83 (2012) (finding "cause" where an objective factor—counsel's abandonment—that could not be fairly attributed to the petitioner impeded his efforts to comply with state law). And prejudice requires a showing that the default "worked to his *actual* and substantial disadvantage, infecting [the petitioner's] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Spicer contends that cause exists to excuse his default because the additional evidence he presented in his 2016 petition to the Mississippi Supreme Court (i.e. the testimonies gathered during the evidentiary hearing resulting from his 2006 petition) "was not 'reasonably available'" when he first raised a guilt-phase ineffective assistance of counsel claim. And, of course, Spicer could not have presented the transcripts from his trial counsel's testimonies during the evidentiary hearing until after the hearing occurred.

---

[7] To be sure, a petitioner may also defeat a procedural bar "[by] demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Id*. But a "[f]undamental miscarriage of justice is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him," *McGowen v. Thaler*, 675 F.3d 482, 499 (5th Cir. 2012) (quoting *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001)), and Spicer has not attempted to do so here.

The question at this juncture, however, is not whether the evidentiary hearing transcripts themselves were available when Spicer filed his 2006 petition. Rather, the question is "whether [Spicer] possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the petition and pursue the matter through the habeas process." *McCowin v. Scott*, 67 F.3d 100, 102 (5th Cir. 1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 498 (1991)); *see Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997) ("Examples of external impediments include . . . the reasonable unavailability of the factual or legal basis for the claim.").

In this case, Spicer could have obtained and presented the substance of his trial attorneys' testimonies prior to filing his 2006 petition by, for example, invoking the discovery provisions of Mississippi Rule of Appellate Procedure 22(c)(4)(ii). This rule provides for the discovery and compulsory process necessary to conduct an investigation and prepare claims for post-conviction relief. MISS. R. APP. P. 22(c)(4); *see Brown v. State*, 88 So. 3d 726, 730 (Miss. 2012); *Caleb Corrothers v. State*, 189 So. 3d 612, 613 (Miss. 2015).

Specifically, Spicer could have sought leave to depose his trial counsel and, if required, requested subpoenas to compel counsel's attendance. *See, e.g.*, *Corrothers*, 189 So. 3d at 613 (noting that habeas petitioner convicted of a capital offense obtained subpoenas for information from nonparties under Rule 22(c)(4)(ii)'s discovery provisions); *Howard v. State*, 945 So. 2d 326, 360-61 (Miss. 2006) (detailing efforts of habeas petitioner to seek depositions). Then, if Spicer failed to obtain the information he needed, he could show cause to excuse by detailing his efforts to avoid this outcome. MISS. CODE ANN. § 99-39-9(1)(e) (West)).

But Spicer has not done so. In fact, he does not argue that he could not have obtained the *substance* of counsel's testimonies in some form prior to

11

filing his 2006 petition. Thus, we find no occasion to disregard the procedural bar in place. *See Coleman*, 501 U.S. at 750.

In sum, because the Mississippi Supreme Court dismissed Spicer's 2016 petition on independent and adequate state procedural law grounds, and Spicer has failed to show cause for his procedural default, the 2016 claim is procedurally defaulted and barred from review in federal court.

This leaves only Spicer's guilt-phase ineffective assistance of counsel claim as presented in his 2006 petition for us to review, and we turn to it next, concluding that it should be denied on the merits.

B. *Spicer's 2006 guilt-phase ineffective assistance of counsel claim—under our exceedingly deferential standard of review—is without merit.*

In 2006-07,[8] the Mississippi Supreme Court considered—and rejected—Spicer's guilt-phase ineffective assistance of counsel claim on the merits. *See Spicer*, 973 So. 2d at 192-204. This claim is thus exhausted, not procedurally defaulted, and unquestionably subject to federal review.[9] None

---

[8] The Mississippi Supreme Court's order addressing Spicer's 2006 petition was issued in 2007. *See Spicer*, 973 So. 2d at 184.

[9] The district court did not explicitly address the merits of Spicer's guilt-phase ineffective assistance claim as it was presented to the Mississippi Supreme Court in 2006, though Spicer did fully press this issue before the district court. The district court instead addressed the guilt-phase ineffective assistance claim in light of the evidence accompanying the 2016 petition and found that relief should be denied. Because in this instance our review of the district court's legal determinations is *de novo, Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008), we opt to engage this issue on appeal as opposed to remanding it to the district court for consideration in the first instance. *Cf. MWorgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020) ("If adding these claims would be futile on the merits, we will not remand for efficiency's sake."). After all, as we established above, the record accompanying the 2016 petition encompassed the record supporting the 2006 petition along with additional testimony, and the additional evidence greatly benefitted Spicer's position. As such, there is no reason to believe that the district court's ultimate

of these points is disputed on appeal. At issue in this case, however, is what deference we owe to the Mississippi Supreme Court's determinations on the 2006 claim under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d).

i.    Standard of Review

When a state court adjudicates a claim on the merits, as the Mississippi Supreme Court did here, *see Spicer*, 973 So. 2d at 192-202, we ordinarily apply AEDPA deference to the state court's judgment on legal and factual grounds. *See Hill v. Johnson*, 210 F.3d 481, 484-85 (5th Cir. 2000); 28 U.S.C. § 2254(d). In fact, a § 2254 application shall not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In other words, to obtain relief in federal court under § 2254, the applicant "must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

"[A] federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). And a federal court should presume that the state court's factual findings are correct unless the

---

conclusions—denying habeas relief—would have changed had it turned to the 2006 record alone.

applicant rebuts those findings with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

And so, it logically follows from this, that to determine whether the Mississippi Supreme Court's ruling in this case was contrary to, and an unreasonable application of, federal law we must *first* apply § 2254(d)(1)'s deference standard. It is only if we find that the state court's adjudication is owed no deference under AEDPA—by virtue of its objective unreasonableness—that Spicer is then entitled to *de novo* review of his 2006 guilt-phase ineffective assistance claim. *Langley v. Prince*, 926 F.3d 145, 156 (5th Cir. 2019) (en banc), *cert. denied*, 140 S. Ct. 2676 (2020).[10]

Accordingly, we turn to the merits of Spicer's ineffective assistance of counsel claim applying AEDPA's exceedingly deferential standard of review.

ii.   Ineffective Assistance of Counsel

    a.   *Governing Law*

The first part of establishing a Sixth Amendment violation as a result of ineffective assistance of counsel is to show that representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. And in assessing counsel's actions, we take account of the difficult strategic choices defense lawyers have to make during trial. *Id*. at 689, 104. This means that—in addition to the significant deference due in this posture under

---

[10] In this case, Spicer does not allege that the Mississippi courts committed a due process violation—or any federal or state procedural violation for that matter—that prevented him from presenting or developing his claims or otherwise denied him an opportunity to be heard in violation of federal law. *Cf. Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (standing for the general proposition that, where an applicant can show that a state court abrogated federal law by failing to provide adequate and consistent due process protections in state court post-conviction proceedings concerning a death row prisoner, federal courts will not provide AEDPA deference to the state court's denial of relief); *Wiley v. Epps*, 625 F.3d 199, 213 (5th Cir. 2010) (same).

AEDPA—there is yet another layer of deference for claims challenging counsel's effectiveness. *Sanchez v. Davis*, 888 F.3d 746, 749 (5th Cir. 2018). Indeed, applying AEDPA on top of the deference already built into *Strickland*'s effectiveness inquiry means that the review is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

Then, even if Spicer could overcome these obstacles and show that counsel's performance fell below constitutional standards, he must still show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Although there is no double deference for this prejudice inquiry, "AEDPA's single layer of deference still poses a formidable obstacle." *Sanchez*, 888 F.3d at 749.

### b.   *Factual Background*

When Spicer was tried for Edmond Hebert's murder in state court, he was represented by two court-appointed lawyers, Darryl A. Hurt, Sr., and George County Public Defender Sidney Barnett.

The guilt phase of Spicer's trial lasted two days. During the trial, the State offered testimony that Spicer and Hebert—the murder victim— socialized at a friend's home on the evening of October 11, 2001. *Spicer*, 921 So. 2d at 299-300. The two left the friend's home around 11:00 p.m. that night and purportedly returned to Hebert's trailer. *Id.* at 300. The State alleged that, later that night, Spicer beat Hebert with the handle of a sword, causing Hebert's death by blunt-force trauma to the head. Spicer then allegedly fled the scene in Hebert's truck. Law enforcement detained and arrested Spicer on the morning of October 12, 2001, after pulling him over for a traffic violation. *Id.* 300-02.

In support of its theory of the case, the State first offered evidence that, the day after Hebert was killed, law enforcement attempted to pull Spicer over after they saw him suspiciously swerving across three lanes of traffic. *Id.* at 300-01. In response, Spicer—who was driving Hebert's truck—fled from law enforcement. *Id.* A witness testified that Spicer confessed to stealing the truck. Second, a forensic pathologist, Dr. Steven Hayne, testified that the handle of a sword belonging to Hebert was the probable murder weapon. *See id.* 302 n.7. As police discovered Hebert's sword in the cab of Hebert's truck, the State argued that this proved that Spicer was also in possession of the murder weapon. *Id.* at 301-02. Third, the sword had Herbert's blood on it, linking the weapon to the scene of the crime. *See id.* at 302. Finally, a green camouflage jacket found in the truck's toolbox as well as the cargo pants and t-shirt worn by Spicer at the time of his detention also had Hebert's blood on them, linking Spicer to the scene of the crime. *Id.*

During trial, the State's forensic experts went essentially unchallenged. In fact, Amrita Lal, who testified regarding the DNA testing of the various blood samples, was not cross-examined at all. After the State closed its case, defense counsel rested without presenting a single witness.

With this in mind, we assess in turn the Mississippi Supreme Court's determinations that Spicer's Sixth Amendment rights were not violated based on trial counsel's alleged failure to (1) present exculpatory forensic evidence, (2) investigate the case, and (3) consult with Spicer.

### c.    *Review of the Mississippi Supreme Court's 2006 Determinations*

To begin, the Mississippi Supreme Court rejected Spicer's claim that his counsel was ineffective at the guilt-phase of this trial for failing to obtain an exculpatory forensic report. *Spicer*, 973 So. 2d at 195.

On appeal, Spicer's arguments amount to an assertion that the Mississippi Supreme Court was objectively unreasonable in concluding as

much because counsel's failure to present *any* counter-expert testimony left the jury with "no reason to question the conclusions of the State's experts and the vital foundations they laid for the State's case." And, indeed, in *Draughon v. Dretke*, 427 F.3d 286 (5th Cir. 2005), we held that counsel was deficient under similar circumstances.[11] The same is true of *Soffar v. Dretke*, where we held that an applicant's counsel was deficient for not obtaining expert testimony because the evidence went to the truth of the applicant's confession, because counsel never consulted an expert, and because there was no apparent strategic reason for not consulting an expert. 368 F.3d 441, 476-78 (5th Cir. 2004).

Certainly, as *Strickland* dictates, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. And counsel's failure to present *any* counter-expert testimony might constitute an abdication of this duty, and hence, ineffective assistance. *See Draughon*, 427 F.3d at 296. But, even if we assume that *Draughon* and *Soffar* help Spicer clear the daunting obstacle set by the "doubly deferential" standard of review of *Strickland*'s effectiveness inquiry in this posture, *see Cullen*, 563 U.S. at 190 (2011), he fails to show prejudice.

---

[11] In *Draughon*, counsel failed to obtain expert testimony that the bullet that killed the victim ricocheted off a hard surface before hitting the victim, showing that the applicant was farther away from the victim when he fired the gun, making it less likely that the applicant had intentionally killed the victim. 427 F.3d at 291-92, 294-96. Because this evidence concerned an important issue at trial, because counsel did not retain any experts to determine the path of the bullet, and because there did not appear to be a strategic reason for not obtaining expert testimony, we determined that counsel's performance was deficient. *Id.* at 296.

This is so because the evidence pointing to Spicer's guilt was significant in this case, perhaps even overwhelming. Specifically, the evidence supporting the jury's verdict establishes than that Spicer lived with Hebert, was the last known person to have been with him prior to his death, drove his truck, may have been upset that Hebert offered his dog to a neighbor instead of Spicer, and did not show up to work on the morning that Hebert's body was discovered. Spicer acted evasively after law enforcement attempted to pull him over.

Most importantly—as the Mississippi Supreme Court viewed it—Hebert's fatal injury was consistent with a sword found in Hebert's truck that Spicer was driving the same day that Hebert's body was discovered, and Hebert's blood was on the sword and on Spicer's clothing.

To be sure, in support of his 2006 petition, Spicer submitted an affidavit by Dr. O' Brian C. Smith, a forensic pathologist. Smith opined that (i) the sword found in Hebert's truck that Spicer was driving had blood belonging to "an unidentified third party" and that the presence of the "third party's blood present should have been exculpatory," and (ii) the sword was not the weapon that killed the victim.

Turning to Smith's testimony, the Mississippi Supreme Court noted that Smith "stated in his affidavit that no 'indicia of sharp force injuries were present'" and that Hebert died "from blunt force trauma to the head, particularly a 'large abraded laceration.'" *Id*. This, the court concluded, "did not refute [the State's expert's] testimony," *id.,* as the State's expert testified that the injuries that were visible on Hebert's face were consistent with a strike from the *blunt*, non-sharpened end of the sword. *Id.* at 194-95.

And, with respect to Smith's testimony regarding the presence of a third party's blood, the court noted that the "State's expert testified that the swabs taken from the blood on the sword were a mixture of more than one

person's blood, but the victim's blood was included in that mixture." *Id.* Thus, just like his testimony about the blunt-force trauma, Smith's conclusion about the blood of the unidentified third party did nothing to refute the State's expert. *See id.*

Finally, the court noted that failing to consult a DNA expert would not "have helped Spicer, because he claimed self-defense." *Id.* The court, for these reasons, found Spicer's ineffective-assistance claim regarding counsel's failure to procure exculpatory forensic evidence to be without merit. *Id.*

In light of the state court's reasoning, it is clear that it found that— Smith's testimony notwithstanding—there was a tenable link between the alleged murder weapon, Spicer, and the murder victim. *Spicer*, 973 So. 2d at 194-95. Under AEDPA, we presume that the state court's factual findings are correct unless these are rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), which they have not been.

And, so, the evidence against Spicer amounts to significantly stronger evidence than the evidence against the applicants in *Draughon* and *Soffar*, who did establish prejudice. *See Draughon*, 427 F.3d at 294-97 (relating that the only evidence that applicant shot victim at close range was from one witness who was agitated at the time of shooting); *Soffar*, 368 F.3d at 478-80 (relating that prosecution relied primarily on applicant's confession and noting that there was no physical or eyewitness evidence that applicant committed the crime). As such, accounting for the deference owed to the state court's determinations in this posture, we find that Spicer has failed to show that there is a "reasonable probability that, but for counsel's unprofessional errors [regarding the exculpatory forensic report], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

We likewise defer to the Mississippi Supreme Court's rejection of Spicer's claim that counsel otherwise failed to investigate his case, forensic report aside.

To make out his failure-to-investigate claim before the Mississippi Supreme Court, Spicer relied on counsel's affidavits, wherein each attorney respectively stated that he did not have any "'notes, draft pleadings, correspondence, investigatory reports, attorney work-product, or other nonpublic information" related to Spicer's case. *Spicer*, 973 So. 2d at 194. Spicer argued to that court "that the affidavits amount to an admission from each of his trial counsel that they performed no investigation at all." *Id*.

The Mississippi Supreme Court found that it was "a stretch to assume, let alone conclude, that Spicer's counsel did not investigate the alleged crime based solely on the aforementioned affidavits." *Id*. Noting that Spicer had "provided no affidavits from the officers who testified for the State, stating that they were not contacted or questioned by the defense," *id*. at 195, and finding that the trial transcript "reveal[ed] that counsel were fully prepared for cross-examination of the State's witnesses, and were able to question the witnesses about details not brought out on direct examination," *id*. at 194, the court concluded that Spicer's failure-to-investigate claim had no merit. *Id*.

Spicer does not meaningfully challenge these findings on appeal. Although he makes generalized statements that his counsel failed to undertake a pretrial factual investigation of the case, he fails to point to the state court's ignorance of any specific facts that a pretrial investigation would have uncovered and fails to explain how these facts might have aided his defense. *See Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (An applicant "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would

have altered the outcome of the trial." (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).

In that regard, even assuming *arguendo* that Spicer was able to demonstrate that his counsel's general lack of diligence amounts to a deficient performance, because he has not alleged what facts would have been uncovered through a pretrial investigation, he has again failed to show "there is a reasonable probability" that any such investigation would have caused "the result of the proceeding to be different." *Strickland*, 466 U.S. at 694.

Finally, the Mississippi Supreme Court correctly rejected Spicer's argument that counsel failed to consult with him and thereby violated his Sixth Amendment rights. *See Spicer*, 973 So. 2d at 192.

According to the Mississippi Supreme Court, Spicer's failure-to-consult claim is premised on Hurt's "time sheet/billing statement," which showed that Hurt spent only 63.25 hours in pretrial preparation on Spicer's case and devoted no time to any factual investigation or legal research. *Spicer*, 973 So. 2d at 192. The court noted, however, that Spicer made "no assertion as to the number of hours Barnett spent on the case," "and[,] as a salaried public defender, Barnett would have no need to supply a billing statement to the trial court for payment." *Id.* at 193. Although Spicer points out on appeal that Hurt's time records "demonstrate that he did not interview any of the State's fact witnesses, or review their videotaped police interviews, prior to trial," he does not establish that Barrett was similarly delinquent based on the evidentiary record before the Mississippi Supreme Court in 2006.

To the Mississippi Supreme Court, it was "apparent from the record that the defense had formed a strategy of self-defense as evidenced by much of the cross-examination of the State's witnesses and the jury instruction that the defense proffered." *Id.* That defense, however, was "undermined by Spicer's decision not to take the stand in his own defense, which undeniably

21

is his right." *Id.* The court pointed out that Hurt had informed the trial court that counsel had advised Spicer to testify "'in order to assert the defense of self-defense,'" but that Spicer refused. *Id.* And it noted the trial court's exchange with Spicer, wherein Spicer indicated that his decision not to testify was fully informed based on counsel's advice regarding various factors and that he was satisfied with that advice. *Id.*

The court concluded that "counsel did have a strategy in Spicer's case, which indicates that counsel had consulted with Spicer prior to trial in formulating a defense" and that Spicer was satisfied with counsel's advice. *Id.* at 193-94. Noting that Spicer had not provided an affidavit "alleging that his attorneys did not consult with him," the court held that this ineffective assistance claim premised on counsel's failure to consult was without merit. *Id.* at 194.

On this record, we cannot conclude that this was an objectively unreasonable application of federal law. *See Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984) (emphasizing that there is a presumption that counsel's conduct is reasonable and professional); *cf. Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000) (noting, in the context of appeals, that when a defendant is satisfied with the advice of counsel and subsequently takes fully informed decisions on his own, there is likely no unreasonable action on counsel's part).

To be sure, Spicer shows that his failure-to-consult claim would be strengthened by the transcripts from his trial counsel's testimonies during the post-conviction relief evidentiary hearing and the related depositions. But the substance of those testimonies was not presented to the Mississippi Supreme Court as part of Spicer's petition in 2006. Consequently, Spicer has failed to show that the Mississippi Supreme Court's rejection of this claim in

2006 "was contrary to, or involved an unreasonable application of," *Strickland*. 28 U.S.C. § 2254(d)(1).

Up against AEDPA's formidable layer of deference, *Sanchez*, 888 F.3d at 749, we agree with the state court's determination on this issue.

## V.

Because we defer to all of the Mississippi Supreme Court's determinations that Spicer's constitutional rights were not violated and conclude that our review of Spicer's 2016 petition is procedurally barred, we AFFIRM the district court's denial of habeas relief.